1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                           EASTERN DISTRICT OF CALIFORNIA
10
11    WANI J. KOSE,                              Case No.: 1:23-cv-00557-CDB
12                   Plaintiff,                  **FINDINGS AND RECOMMENDATIONS TO
                                                 DISMISS CERTAIN CLAIMS**
13            v.
                                                 **14-DAY OBJECTION PERIOD**
14    H. SIEZ, et al.,
15                   Defendants.
                                                 Clerk of the Court to Assign District Judge
16

17          Plaintiff Wani J. Kose is proceeding *pro se* and *in forma pauperis* in this civil rights

18    action pursuant to 42 U.S.C. § 1983.

19          **I.      SCREENING REQUIREMENT**

20          The Court is required to screen complaints brought by prisoners seeking relief against a

21    governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

22    The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

23    fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

24    who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if

25    it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal

26    theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

27    //

28    //

1      II.      **PLEADING REQUIREMENTS**

2              **A.  Federal Rule of Civil Procedure 8(a)**

3          "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

4  exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

5  "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R.

6  Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the

7  plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

8  quotation marks & citation omitted).

9          Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

10  cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

11  U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

12  set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

13  *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

14  conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

15          The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of

16  any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

17  liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

18  theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

19  of a civil rights complaint may not supply essential elements of the claim that were not initially

20  pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

21  quotation marks & citation omitted), and courts "are not required to indulge unwarranted

22  inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

23  marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

24  sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

25  liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

26              **B.  Linkage and Causation**

27          Section 1983 provides a cause of action for the violation of constitutional or other federal

28  rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

1  section 1983, a plaintiff must show a causal connection or link between the actions of the

2  defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

3  423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

4  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

5  act, participates in another's affirmative acts, or omits to perform an act which is he legal required

6  to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

7  743 (9th Cir. 1978) (citation omitted).

8       **III.    DISCUSSION**

9            **A.  Plaintiff's Complaint**

10      Plaintiff's complaint names Correctional Officer H. Siez, and Registered Nurses Negre

11  Analyn[1] and Melisa Walker, all employed at North Kern State Prison, as Defendants. (Doc. 1 at

12  1-2.) Plaintiff sues Defendants in their individual and official capacities. (*See* Doc. 1 at 23

13  [handwritten page with "'1-A'" entered at the bottom].) By way of relief, Plaintiff seeks a

14  declaratory judgment, compensatory and punitive damages, and any other relief the Court deems

15  proper. (*Id*. at 22.)

16      Because Plaintiff's complaint provides supporting factual allegations as to each claim

17  asserted, the factual allegations will be addressed separately in the same manner.

18            **B.  Plaintiff's Claims**

19          **Claim I: Eighth Amendment Threat to Safety**

20              ***Factual Allegations***

21      Plaintiff contends that on July 14, 2020, he was "monitored at TTA"[2] after being found

22  unconscious in his cell. (Doc. 1 at 3.) Plaintiff states he was taken to TTA "with no shoes on."

23  (*Id*.) Defendant H. Siez was the medical transport officer on the morning shift and noticed

24  Plaintiff's "condition was not well" and inquired of Plaintiff whether he was able to walk. (*Id*.)

25

26  [1] Plaintiff's complaint alternates between identifying this defendant by her first name and her last name. For the sake of continuity, the Court will refer to Defendant Negre Analyn by her surname.

27

28  [2] According to the California Department of Corrections and Rehabilitation, "TTA" is a Triage and Treatment Area.  *See* https://www.cdcr.ca.gov (last visited June 27, 2023).

1    Plaintiff advised Siez he did not wish to walk because he "was still dizzy and [had] bare feet."

2    (*Id*.) Plaintiff contends he had to walk after "attempting to get a wheelchair from RN Negre

3    Analyn and RN Melisa Walker." (*Id*.) Plaintiff contends it was "torture stepping on rocks and

4    gravel [stabbing his] feet." (*Id*.) Siez noticed Plaintiff stumbling and stated, "Now that's messed

5    up how the nurses were acting." (*Id*.) Plaintiff contends Siez told him he "should write it up" and

6    that Plaintiff "looked just like" Siez's son. (*Id*.) Plaintiff contends Siez advised him "that

7    watching how the nurses didn't want to help made him think about what if [Plaintiff] was his

8    son." (*Id*.)

9         Plaintiff asserts Siez decided to use a golf cart to prevent Plaintiff from suffering further.

10   (Doc. 1 at 4.) The golf cart was "a cart that was a two seater with a mini truck like flat bed in the

11   back." (*Id*.) Plaintiff asserts there "was no way to transform that flat bed into a seat," that there

12   were no rails or seat belts, and that his feet touched the ground while sitting on the low cart. (*Id*.)

13   As Plaintiff sat back on the cart far enough to rest his feet on the ground because standing and

14   walking had made him drowsy, Siez "[fiddled] with the trash on the seats." (*Id*.) Plaintiff

15   contends that after moving trash from the driver's seat to the passenger's seat, Siez reversed the

16   cart without any warning. (*Id*.) Plaintiff did not hear "an engine come on." (*Id*.) Plaintiff states

17   Siez "never even told [him] we were traveling in this cart otherwise [Plaintiff] would have asked

18   to sit some place safe." (*Id*.) He asserts as the cart reversed, it changed direction quickly and

19   jerked his body. (*Id*.) Plaintiff contends as the cart "went quickly forward from reverse," it tossed

20   Plaintiff off the flat bed. (*Id*.) Plaintiff fell off the back of the cart but prevented his head from

21   slamming into the concrete. (*Id*. at 5.) Plaintiff used his left hand to brace his fall; he contends his

22   "shoulder made a sound that was like rubbing rocks make and pain shot up" his left shoulder.

23   (*Id*.) He contends his shoulder popped "in and out leaving [him] injured." (*Id*.)

24        Plaintiff states he could not move his shoulder without serious pain. (Doc. 1 at 5.) Plaintiff

25   contends Defendant Analyn "kept being ruff" after Siez returned Plaintiff to TTA. (*Id*.) Analyn

26   stated to Plaintiff "'Your [sic] back that fast.'" (*Id*.) Plaintiff "told her to stop trying to move [his]

27   shoulder because it hurts everytime she does." (*Id*.) Plaintiff contends Analyn refused his request

28   for a sling, "along with RN Walker." (*Id*.) Plaintiff asserts Siez was provided with a wheelchair

                                                      4

"this time" and escorted Plaintiff. (*Id*.) Plaintiff contends as they were heading to A yard, Siez told Plaintiff "about how the nurses were not being fair and how the treatment was not usual never has he seen someone get denied a wheelchair when being barefeet and dizzy." (*Id*.) Plaintiff asserts Siez told Plaintiff he was trying to help because he saw Plaintiff suffering while walking. (*Id*.) Plaintiff states he is "not saying H. Siez had an intent to hurt [him] but he knew that cart would not be safe and [Plaintiff is] sure he thought about putting [Plaintiff] in the front seat." (*Id*. at 6.) Plaintiff contends Siez "acted with the understanding that it was a dangerous situation." (*Id*.) Analyn and Walker made "it hard on" Siez because they did not do "their job in a reasonable manner, but Siez knew better." (*Id*.) Siez knew Plaintiff was dizzy and failed in his obligation to take reasonable measures to guarantee Plaintiff's safety. (*Id*.) Plaintiff contends a reasonable person would know it was not safe to put a sick person on the flat bed of a moving cart without seat belts or railings. (*Id*.) Plaintiff further contends Siez "did things the easy way," rather than clearing a place for Plaintiff in the seat at the front of the cart. (*Id*.) Plaintiff asserts Siez could also have "gotten a real medical cart" as an alternative. (*Id*.) Plaintiff suffered injuries that continue to cause him pain and suffering. (*Id*.)

### *Applicable Legal Standards & Analysis*

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted).

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33 & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of

5

1    serious harm or injury to an inmate." *Id.* (citing *Gibson v. County of Washoe*, 290 F.3d 1175,

2    1187 (9th Cir. 2002)).

3         A failure to protect claim under the Eighth Amendment requires a showing that "the

4    official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at

5    837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of

6    fact subject to demonstration in the usual ways, including inference from circumstantial evidence,

7    ... and a factfinder may conclude that a prison official knew of a substantial risk from the very

8    fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from

9    serious harm requires that prison officials take reasonable measures to guarantee the safety and

10   well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As

11   "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff

12   must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson*

13   *v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, & citations omitted).

14        Liberally construing the complaint, Plaintiff has plausibly alleged an Eighth Amendment

15   threat to safety/failure to protect claim against Defendant Siez. Plaintiff has sufficiently alleged

16   Siez knew of and disregarded a substantial risk of harm to Plaintiff when Siez opted to transport

17   Plaintiff while sitting in the flatbed of a cart, when a passenger seat reasonably was available, in

18   the absence of safety restraints and operating the cart in such a manner, knowing Plaintiff was

19   dizzy and unwell following an earlier episode of unconsciousness, causing Plaintiff to fall from

20   the moving cart and suffer serious injuries.

21        Notably however, Plaintiff may not pursue his claims for monetary damages against

22   Defendant Siez in his official capacity. "The Eleventh Amendment bars suits for money damages

23   in federal court against a state, its agencies, and state officials in their official capacities."

24   *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).

25   However, the Eleventh Amendment does not bar suits seeking damages against state officials in

26   their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483,

27   491 (9th Cir. 2003). Nor does it bar suits for injunctive relief brought against state officials in

28   their official capacities. *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991).

6

1    Thus, Plaintiff may only proceed in this action for monetary damages against Defendant Siez in

2    his individual capacity.

3            **Claims II & III: Eighth Amendment Deliberate Indifference to Serious Medical Needs**

4                                        *Factual Allegations[3]*

5            Plaintiff asserts that on July 19, 2020, after being found unconscious in his cell and

6    transported to medical. (Doc. 1 at 8.) He was not wearing shoes. (*Id.*) After regaining "some

7    consciousness," he was placed in a wheelchair and transported to TTA for monitoring by

8    Defendants Analyn and Walker. (*Id.*) He advised Analyn and Walker that he had been drugged by

9    an inmate and couldn't remember much of what had occurred. (*Id.*) Analyn stated to Plaintiff,

10   "You probably smoked something." (*Id.*) Plaintiff told Analyn he did not smoke and that

11   "[indecipherable] put something in" his drink. (*Id.*) Plaintiff states he felt like his life was in

12   danger and he did not know why someone would drug him. (*Id.*) Plaintiff believes it was an

13   attempt on his life and contends his "body was presenting signs that [he] was raped." (*Id.*) He

14   contends neither Analyn nor Walker cared he had been raped or why he had been drugged; both

15   ignored it and "never even had [his] blood tested." (*Id.*)

16           Plaintiff contends Defendant Analyn was "very upset" Plaintiff was "brought back to TTA

17   on a Saturday," stating he could have been monitored on A-yard and that Plaintiff was "just going

18   to go back and smoke that shit and come back." (Doc. 1 at 9.) Plaintiff asserts "there was nothing

19   that said" he had smoked anything; he was distressed by Analyn's comments because he was in

20   "a real crisis!! Medical Emergency!" (*Id.*) Plaintiff contends he was drugged, does not remember

21   much of anything and his body felt as if he was raped. (*Id.*) He asserts Analyn was

22   unprofessional. (*Id.*) After 30 to 45 minutes he was discharged by Analyn and Walker before he

23   felt well. (*Id.*) Walker told him he would be fine if he just rested. (*Id.*) He told Walker he had no

24   problem going back to his cell, but that he was still feeling dizzy. (*Id.*) Plaintiff asserts he told

25   both Analyn and Walker he was "still feeling sick and unstable, because they were rushing [him]

26   out of the clinic and he was dizzy and bare feet." (*Id.*) Analyn and Walker were aware Plaintiff

27

28   ---
     [3] The factual allegations for Claims II and III are the same. (Doc. 1 at 8-14 to Doc. 1 at 15-21.) The Court presumes Plaintiff intended one claim against Defendant Analyn and another against Defendant Walker.

did not have shoes and that he was not well enough to walk a half mile in bare feet while dizzy. (*Id*.) Plaintiff contends it was "a form of torture to force someone to walk ½ mile bare feet a [sic] dizzy, it safe to say the intent seem clear." (*Id*.)

Further, Plaintiff states that after he tried to explain to Analyn and Walker why he needed a wheelchair, both "failed to understand the basic humanistic values when looking down and noticing my barefeet and thinking about my condition being dizzy still." (Doc. 1 at 10.) Plaintiff contends Walker walked away from him as he "begged for her help and compassion." (*Id*.) After a final plea to Analyn, she stated "I told you its my 'chill Saturday,'" then Analyn said "something about a work feud they have with the A-yard medical because they never bring back the wheel chairs when an inmate is sent with one." (*Id*.) Analyn stated it was too far to be walking to A-yard to pick up a wheelchair. (*Id*.) Plaintiff contends he tried to speak with Defendant Siez about it, but Siez told him to "write it up as a complaint." (*Id*.) Plaintiff asserts he told Analyn he would be writing both Analyn and Walker up; Analyn showed Plaintiff her name tag and stated, "Don't spell my name wrong." (*Id*.) As Plaintiff walked out, Siez made comments about Plaintiff's medical treatment and resemblance to his own son "dark skin and hair stile [sic] (dread locks)." (*Id*.) Plaintiff contends he suffered while walking on gravel and small rocks, was "walking like a drunk," and was drowsy. (*Id*. at 10-11.) Plaintiff states he later injured his shoulder and back "not even 50 ft from TTA," referring to the cart incident. (*Id*. at 11.) Plaintiff contends his injuries are attributable to Analyn and Walker for refusing to assist him. (*Id*.) He contends after his fall they "magicly went to find a wheel chair to make sure" he was safe. (*Id*.) Further, Plaintiff contends Analyn and Walker ignored his condition the first time they refused him a wheelchair and failed to send him to x-ray after he fell injuring his shoulder. (*Id*.) They also failed to provide him with a sling, downplayed his pain level and his injury and "barely even" checked him properly. (*Id*.) Analyn stated Plaintiff was exaggerating the pain level, telling Plaintiff she saw him catch himself and that it could have been worse. (*Id*.)

Plaintiff contends Analyn and Walker were deliberately indifferent despite knowing he was dizzy and in bare feet. (Doc. 1 at 12.) He further contends Analyn and Walker "acted with a sufficient culpable state of mind" and that he suffered for nearly eighteen months. (*Id*.) He

1  contends his back still bothers him and his shoulder "still pops out if" he moves wrong in his

2  sleep. (*Id.*) He contends the risk of harm was obvious and both Analyn and Walker subjected him

3  to a substantial risk of physical harm "by giving [him] less then the dignity of men." (*Id.*) Plaintiff

4  asserts "no one took [his] pain serious" and he developed "extra suffering with frozen shoulder,"

5  having to keep his arm steady to avoid pain. (*Id.*) Plaintiff contends Analyn and Walker "never

6  took the obligation they had to take reasonable measures to guarantee" his safety, he was not

7  treated "with the Eighth Amendment in [] mind," and that both defendants "did what was easy

8  instead of what was reasonable." (*Id.* at 13) He states if Analyn and Walker would have provided

9  a wheelchair in the first instance he would have avoided the subsequent injury. (*Id.*) He repeats

10  his assertions he was ignored, and that Defendants did not care because it was Saturday. (*Id.*)

11  ***Applicable Legal Standards & Analysis***

12      Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

13  prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

14  is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

15  infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.

16  Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059

17  (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

18  Cir. 1997) (en banc)).

19      To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

20  first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

21  could result in further significant injury or the unnecessary and wanton infliction of pain.  Second,

22  the plaintiff must show the defendants' response to the need was deliberately indifferent."

23  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096

24  (quotation marks omitted)).

25      As to the first prong, indications of a serious medical need "include the existence of an

26  injury that a reasonable doctor or patient would find important and worthy of comment or

27  treatment; the presence of a medical condition that significantly affects an individual's daily

28  activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060,

1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

Here, liberally construing the complaint, Plaintiff has plausibly stated deliberate

10

indifference to serious medical needs claims against Defendants Analyn and Walker. This is so because Plaintiff has asserted a serious medical need—being found unconscious in his cell, reporting being drugged and raped and continuing to feel dizzy and suffering a later fall that injured his back and shoulder—thus meeting the first prong of the deliberate indifference test. Further, Plaintiff has sufficiently alleged a failure to respond by Analyn and Walker where both were aware Plaintiff had been found unconscious in his cell and was to be monitored, that Plaintiff alleged he had been drugged and raped, and continued to feel dizzy and unwell, and that after a subsequent fall, Plaintiff reported pain in his left shoulder. He also asserts he was denied a wheelchair, a sling, and an x-ray. Further, Plaintiff has also sufficiently alleged harm by contending he suffers from chronic back pain, a loss of range of motion, a shoulder injury that continues to cause pain and suffering, and an inability to perform daily activities. These alleged facts meet the second prong of the deliberate indifference test.

Nevertheless, as explained above concerning the claim against Defendant Siez, Plaintiff may not pursue his claims for monetary damages against Defendants Analyn and Walker in their official capacities. *Aholelei*, 488 F.3d at 1147. Plaintiff may only proceed in this action for monetary damages against Defendants Analyn and Walker in their individual capacities. *Hafer*, 502 U.S. at 30; *Porter*, 319 F.3d at 491.

## IV.    CONCLUSION AND RECOMMENDATIONS

The Clerk of the Court is **DIRECTED** to randomly assign a district judge to this action.

Further, and for the reasons given above, the Court finds Plaintiff has stated a cognizable Eighth Amendment failure to protect claim against Defendant Siez and cognizable Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Analyn and Walker, in their individual capacities. Therefore, the Court hereby **RECOMMENDS** that:

1. This action **PROCEED** on Plaintiff's Eighth Amendment failure to protect claim against Defendant Siez, and his deliberate indifference to serious medical needs claims against Defendants Analyn and Walker, in their individual capacities only; and

2. Plaintiff's claims against Defendants Siez, Analyn and Walker, in their official capacities, be **DISMISSED**.

11

1    These Findings and Recommendations will be submitted to the district judge assigned to this

2    case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings

3    and Recommendations, a party may file written objections with the Court. The document should

4    be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file

5    objections within the specified time may result in waiver of rights on appeal. *Wilkerson v.*

6    *Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th

7    Cir. 1991)).

8    IT IS SO ORDERED.

9        Dated:   __June 27, 2023__                    _____

10                                                    UNITED STATES MAGISTRATE JUDGE